1
2
3
4
5
6
7                            UNITED STATES DISTRICT COURT
8                          SOUTHERN DISTRICT OF CALIFORNIA
9

| | |
|---|---|
| 10  ELEANOR BALLESTER, | Case Nos.:  3:23-cv-1854-RBM-VET; |
| 11                          Plaintiff, | 3:23-cv-2244-RBM-VET; 3:24-cv-0454-RBM-VET |
| 12  v. | |
| 13  SCOTT FINKBEINER, et al., | **ORDER      DISMISSING      CASES WITHOUT LEAVE TO AMEND** |
| 14                          Defendants. | |
| 15 | **[Case No. 3:23-cv-1854-RBM-VET** |
| 16  ELEANOR BALLESTER, | **Docs. 10, 13–14, 21–23, 26–27, 30, 32–** |
| 17                          Plaintiff, | **33, 35–38]** |
| 18  v. | **[Case No. 3:23-cv-2244-RBM-VET** |
| 19  COMMISSIONER LEAH BOUCEK, et | **Docs. 3, 8, 13, 15–21]** |
| 20  al., | **[Case No. 3:24-cv-0454-RBM-VET** |
| 21                          Defendants. | **Docs. 7, 16–17]** |
| 22 | |
| 23  ELEANOR BALLESTER, | |
| 24                          Plaintiff, | |
| 25  v. | |
| 26  JUDGE LAURA H. MILLER, et al., | |
| 27                          Defendants. | |

28
                                          1

Plaintiff Eleanor Ballester, proceeding pro se,[1] has filed five cases under 28 U.S.C. § 1983 alleging violations of her rights under the Fourteenth Amendment.  (Case Nos. 3:23-cv-1730-RBM-VET ("1730 Case"); 3:23-cv-1839-RBM-VET ("1839 Case"); 3:23-cv-1854-RBM-VET ("1854 Case"); 3:23-cv-2244-RBM-VET ("2244 Case"); 3:24-cv-0454-RBM-VET ("454 Case").)[2]  The allegations of each case arise out of decisions in Plaintiff's state court family law case, San Diego County Superior Court Case No. 21FL009971C (hereinafter, the "family law case").

On May 14, 2024, the Court issued an Order granting numerous motions in the 1730 Case and 1839 Case and dismissing those cases without leave to amend.  (1730 Case-Doc. 56; 1839 Case-Doc. 34.).  This Order addresses the numerous motions and requests for other relief that have been filed in Plaintiff's additional three cases.  (1854 Case-Docs. 10, 13–14, 21–23, 26–27, 30, 32–33, 35–38; 2244 Case-Docs. 3, 8, 13, 15–21; 454 Case-Docs. 7, 16, 17.)  Because these three cases are based on Plaintiff's challenges to proceedings in the same family law case in state court, name some of the same Defendants, and all challenge decisions issued in Plaintiff's family law case, the Court addresses the pending motions in these remaining cases in this single Order.

For the reasons set forth below, the motions seeking to strike Plaintiff's amended complaints in the 1854 Case and 2244 Case (1854 Case-Docs. 30, 32–33, 36;[3] 2244 Case-Docs. 13, 15) are **<u>GRANTED</u>**.  The motions to dismiss in the 1854 Case, 2244 Case, and

---

[1] The Court notes that while Plaintiff is proceeding pro se, she is not proceeding *in forma pauperis*.

[2] When referring to a specific case or a specific document filed in a particular case, the Court will cite the last three or four digits of the case number followed by "Case" and then reference the specific docket number in that case.  Similarly, when referring to a specific complaint, the Court will refer to it by the last three or four digits of the case number followed by Complaint or FAC.

[3] Although the docket text identifies this as a Motion to Dismiss, it is a Motion to Strike Plaintiff's First Amended Complaint.  (Doc. 36 at 1.)

2

454 Case (1854 Case-Docs. 21–23; 2244 Case-Doc. 8; 454 Case-Docs. 16–17)[4] are **GRANTED** to the extent set forth below and these cases are **DISMISSED WITHOUT LEAVE TO AMEND**.

## I.   BACKGROUND

### A.   Complaints

The Court briefly summarizes the allegations of the 1730 and 1839 complaints that were dismissed by a separate Order.  The Court then summarizes the allegations of the 1854 Complaint, 2244 Complaint, and 454 FAC.  As with the Court's prior Order, the Court has considered the entirety of these complaints but has not included every allegation in this summary.  All of the complaints contain many paragraphs of allegations that are repeated as to numerous Defendants without any factual distinctions between them.  Those repeated paragraphs also tend to be legal conclusions.  The Court's summary of the allegations attempts to identify the facts alleged by Plaintiff sufficiently to fully address the pending motions in the remaining three cases.

### 1.   Dismissed Complaints

The 1730 Complaint and 1839 Complaint are more fully detailed in the Court's prior Order dismissing both cases.  (1730 Case-Doc. 56 at 3–8.[5])  This summary is only intended to provide context for Plaintiff's allegations in the 1854 Complaint, 2244 Complaint, and 454 FAC.

The 1730 and 1839 Complaints both sought to void a state court domestic violence restraining order ("DVRO") issued by Defendant Commissioner Leah Boucek on June 21, 2023 in Plaintiff's family law case.  (1730 Compl. at 102–103, 105–106; 1839 Compl. at 59, 61.)   Plaintiff alleged the DVRO was invalid and illegal because Defendant

---

[4] Additional motions to dismiss were filed and are addressed separately below.  (*See infra* II.B.4.a).)

[5] The Court cites the CM/ECF electronic pagination unless otherwise noted.

Commissioner Boucek should have been disqualified from the family law case. (1730 Compl. at 8–18, 100–105; 1839 Compl. at 14–16, 33, 51, 55.) Plaintiff asked the Court to void the June 21, 2023 DVRO and stop Defendant Commissioner Boucek from taking any further action in the family law case. (1730 Compl. at 112–13; 1839 Compl. at 61.)

The 1730 Complaint alleged Defendant Commissioner Boucek "violated Plaintiff's Constitutional Right to Liberty of locomotion … [under] the 14th Amendment" because she did not disqualify herself from hearing Plaintiff's family law case. (1730 Compl. at 10.) More specifically, Plaintiff claimed Defendant Commissioner Boucek issued "a False PERMANENT Restraining Order against Plaintiff, Restraining [Plaintiff] from her children without any evidence of harm to [Plaintiff's] children, or to Defendant [Samuel] Martinette . . . ." (*Id.* at 15; *see also id.* at 112–13 (Seeking "withdrawal and voiding of the [r]estraining [o]rder issued on June 21, 2023, and a [v]oid of any and all court orders, and findings of fact made by [Defendant Commissioner Boucek]" and "[f]or a preliminary injunction ordering … Defendants to cease from taking any further action … in the family law case.").)

The primary variation in the factual allegations of the 1839 Complaint was the assertion that each Defendant participated in, failed to intervene to stop, or was a witness to a September 21, 2023 ex parte hearing. (*See* 1839 Compl. at 4, 14–16, 218 (general allegations regarding ex parte hearing); *Id.* at 30, 33 (Yip); *Id.* at 41–42 (Sachdev); *Id.* at 47 (Heinrich).) Plaintiff sought an order that no further action be taken in the family law case and "a withdrawal and voiding of the Court Order issued on 9/21/2023, and a Void of any and all court orders, and findings of facts made by" Defendant Commissioner Boucek. (*Id.* at 61.) The 1839 Complaint alleged the September 21, 2023 ex parte hearing in the family law case "caused an invalid order to be issued against Plaintiff." (*Id.* at 50.)

In both cases, Plaintiff claimed that Defendant Judge Michael T. Smyth had knowledge of Defendant Commissioner Boucek's violation of Plaintiff's rights in issuing the DVRO and holding the September 21, 2023 hearing and, as her supervisor, had to take

4

action.  (1730 Compl. at 25–26; 1839 Compl. at 18–28.)  As to the other named Defendants, Plaintiff asserted they: (1) should have intervened to stop Defendant Commissioner Boucek from issuing the DVRO against Plaintiff, (2) set in motion a series of actions that caused Plaintiff injuries, (3) conspired with Defendant Commissioner Boucek to issue the DVRO, and (4) caused an invalid restraining order to be issued against Plaintiff based on their false testimony.  (1730 Compl. at 33–35, 37–38, 44–46, 63, 79, 84, 88, 91–92; 1839 Compl. at 28, 32, 37, 46, 50.)  The only other allegations in the complaints simply identify these Defendants' role in the family law, *i.e.*, counsel for a party or presence at the September 21, 2023 hearing.  (*See e.g.* 1730 Compl. at 29, 54, 71; *see e.g.* 1839 Compl. at 4, 14–16, 29–30, 33, 41–42, 47, 218.)  The 1839 Complaint also sought an order from this Court to stop any action in the family law case and void the DVRO, the September 21, 2023 Order, and all other orders from Defendant Commissioner Boucek.  (1839 Compl. at 61.)

### 2. 1854 Complaint

Like the 1839 Complaint, Plaintiff argues in the 1854 Complaint that "Defendants conspired to suborn false evidence and testimony in a secret ex parte meeting on September 21, 2023."  (1854 Compl. at 4.)  The allegations of the 1854 Complaint add a different ex parte hearing held on October 10, 2023.  (*Id.* at 11.)  Plaintiff alleges that Defendant Judge Christopher S. Morris "had ex parte communication in the courtroom on October 10, 2023" with Defendant "Samuel Martinette, Defendant Attorney Benjamin Yip, Defendant Attorney Puja Arun Sachdev, and Defendant Mark Heinrich."  (*Id.* at 11–12.)  Plaintiff asserts that Judge Morris held "an impromptu ex parte communication and d[i]sguis[ed] it as a lawful hearing, and ma[de] an order, all in violation of the law."  (1854 Compl. at 13.)

Allegations as to Judge Smyth are the same as in the prior cases, almost verbatim, and based on his supervision obligations over Defendant Judge Morris.  (*Id.* at 15–23.)  The only variation in the 1854 Complaint is that the allegations against Judge Smyth concern the supervision of Defendant Judge Morris rather that Defendant Commissioner Boucek

and it is a different hearing—the October 10, 2023 hearing—that took place without Plaintiff present.  (*Id.* at 19–20.)

The 1854 Complaint alleges that each other Defendant participated in the October 10, 2023 hearing and did not intervene to stop the hearing or stop other Defendants from making false comments about Plaintiff at the hearing.  (*Id.* at 23–31 ("Finkbeiner"), 31–40 ("Wilkinson"), 40–48 (Yip), 48–57 (Sachdev).)  As to Defendant Samuel Martinette, Plaintiff's ex-husband, she additionally alleges he made false statements about her that were used "to cause an invalid order to be issued against Plaintiff."  (*Id.* at 62.)  As to Defendant Yip, Plaintiff also alleges he made disparaging false comments about her "in order to use his influence and relationship with the court appointed temporary judge so that the [f]amily [l]aw case will not be heard on the merits."  (*Id.* at 46.)  And as to Defendant Heinrich, he is alleged to have been notified by other Defendants of the hearing and attended.  (*Id.* at 58.)

Similar to the 1730 and 1839 Complaints, Plaintiff asserts the October 10, 2023 order issued in her family law case is unlawful and asks this Court to invalidate and void it and any other orders issued in the family law case.  (*Id.* at 67 (asserting the October 10, 2023 Order is "in violation of law," "without lawful justification," and that Defendants have "caused an invalid restraining order to be issued against Plaintiff"), *id.* at 71 (Plaintiff's request for an order "to refrain from taking any further action in the [family law case] immediately until a final hearing and resolution of this action").)

### 3. 2244 Complaint

The 2244 Complaint repeats many of the allegations of the prior complaints concerning Defendant Commissioner Boucek, including that she should have been disqualified because she lived near Plaintiff's ex-husband and did not disclose that information.  (2244 Compl. at 1–24, 28–30, 43.)  Plaintiff repeats the allegations that all the orders issued by Defendant Commissioner Boucek "are void because [she] violated the law … because of her impropriety, she was disqualified, and without any lawful

6

[j]urisdiction." (*Id.* at 18.)  However, the 2244 Complaint appears to additionally focus on Plaintiff's attempt to withdraw her stipulation to Defendant Commissioner Boucek's appointment in Plaintiff's family law case, the striking of that withdrawal of stipulation, and Defendant Commissioner Boucek's determination on Plaintiff's withdrawal of stipulation.  (*Id.* at 24–28, 31–33, 37, 40–41.)  Plaintiff asserts this violated due process. (*Id.* at 25, 32, 34.)  Plaintiff alleges that Defendant Commissioner Boucek "violated the law" in issuing every order issued in the family law case.  (*Id.* at 18–19 (listing dates of orders issued by Defendant Commissioner Boucek).)  Plaintiff asks the Court to void and vacate all the Court orders made by Defendant Commissioner Boucek.  (*Id.* at 45.)

### 4.    454 FAC[6]

The 454 FAC largely repeats the same conclusory assertions and allegations of her prior complaints, but the 454 FAC varies in that it names different Superior Court judges and one individual identified as a district attorney, Defendant Pena.  (454 FAC at 10–17 (Miller), 17–24 (Hallahan), 24–29 (Mody), 29–35 (Rosenstein), 35–42 (Pena).)

Plaintiff seems to be asking this Court to void all orders issued in her family law case based on the state judges not disqualifying themselves despite Plaintiff having sought it, Defendants not having a public bond on file, and because Plaintiff dismissed her family law case.  (*Id.* at 48, 55 (dismissed); 3, 14, 49–51 (disqualification); 52 (public bond).) Plaintiff's allegations as to Defendants Judge Hallahan, Judge Mody, and Judge Rosenstein are similar to the allegations of her prior complaints against Judge Smyth, *i.e.*, they appear

---

[6] The Court summarizes the *operative* complaint in the 454 Case, titled "1st Amended Complaint."  (Doc. 9.)  Plaintiff filed the initial Complaint in the 454 Case on March 8, 2024.  (454 Case-Doc. 1.)  A Motion to Dismiss the initial Complaint was filed by five of the Defendants on March 29, 2024.  (Doc. 7.)  The same day, March 29, 2024, Plaintiff filed the 1st Amended Complaint.  (Doc. 9.)  The same five Defendants filed a Motion to Dismiss the March 29, 2024 1st Amended Complaint (hereinafter, "454 FAC").  (Doc. 17.) Two additional Defendants also filed a Motion to Dismiss the 454 FAC.  (Doc. 16.) Accordingly, Defendants' first Motion to Dismiss (Doc. 7) is **DENIED as MOOT**.

to be based entirely on supervision responsibilities without any other allegations against them.  (*Id.* at 17–29.)

There are no factual allegations as to Defendant Pena except the unexplained assertion that he created a criminal claim against Plaintiff.  (*Id.* at 35–42, 53.)  There are no factual allegations as to all other listed Defendants—San Diego County, City of San Diego, the Superior Court, Municipal Court, San Diego County Sheriff's Department, and the State of California.  (*Id.* at 43–46, 56–58.)

Similar to all her prior complaints, Plaintiff asks this Court to enjoin any action in the family law case.  (*Id.* at 67.)  She additionally requests the disqualification of the named judges and Defendant Pena be disqualified for bias and prejudice.  (*Id.* at 67.)

### B.    Judicial Notice

Judicial notice and incorporation-by-reference are exceptions to the general rule that courts should not consider materials outside the pleading on a motion to dismiss.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'"  *Id.* at 999 (quoting Fed. R. Evid. 201(b)).  This means that "a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment," but "cannot take judicial notice of disputed facts contained in such public records."  *Id.* (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

Under the incorporation by reference doctrine, courts may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (internal quotations and citations omitted).  "[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself."  *Khoja*, 899 F.3d at 1002.  It allows a defendant to seek incorporation of "a document into the complaint 'if the

8

plaintiff refers extensively to the document, or the document forms the basis of the plaintiff's claim.'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Multiple Defendants have filed requests for judicial notice either in conjunction with a motion or as a separate filing.  (1854 Case-Docs. 21-2, 23-2, 36-1 (filed with motions), 26–27, 35, 38 (separately filed); 2244 Case-Docs. 8-2, 16-2 (filed with motions), 454 Case-Doc. 17-2 (filed with motion).)   There is also significant overlap in their requests with multiple Defendants asking the Court to take judicial notice of the same documents.

The Court need not rely on many of these documents to address the pending motions and is not inclined to take judicial notice of or incorporate documents by reference when it is not necessary to ruling on the pending motions, particularly when the Court is dismissing these cases without leave to amend.  Accordingly, the Court takes judicial notice of the following: (1) the June 21, 2023 Minute Order in the family law case (Ex. 5 to Motion to Dismiss filed by Defendants Yip, Finkbeiner, and Wilkinson (hereinafter "Yip Motion to Dismiss" [1854 Case-Doc. 23-3 at 85–90]); (2) the September 8, 2023 Proposed Statement of Decision (Ex. A to Defendant Sachdev's Motion to Dismiss [1854 Case-Doc. 21-2 at 5–35]); (3) Order Striking Plaintiff's Statement of Disqualification of Commissioner Boucek dated September 19, 2023 (Ex. 12 to Yip Motion to Dismiss [1854 Case-Doc. 23-3 at 124–29]); (4) Defendant Commissioner Boucek's Answer to Plaintiff's Statement of Disqualification (Ex. 4 to Yip Motion to Dismiss [1854 Case-Doc. 23-3 at 76–86]); (5) Minutes of the September 21, 2023 Hearing (Ex. 11 to Yip Motion to Dismiss [1854 Case-Doc. 23-2 at 121–123]); (6) Plaintiff's Motion to Withdraw Stipulation to Appointment of Referee dated September 25, 2023 [Ex. F to Defendant Sachdev's Motion to Dismiss [1854 Case-Doc. 21-2 at 49–78]); (7) Ex Parte Order of Judge Morris dated October 9, 2023 (Ex. 21 to Yip Motion to Dismiss [1854 Case-Doc. 23-3 at 181–83]); and (8) the December 19, 2023 Final Statement of Decision (Ex. 23 to Yip Motion to Dismiss [2244 Case-Doc. 16-3 at 192–221]).

The Court takes judicial notice of these public records but does not take judicial notice of any disputed facts within them. *See Khoja*, 899 F.3d at 999. The Defendants' other requests for judicial notice are __**DENIED**__ because the documents are not necessary to the resolution of the pending motions. *Limcaco v. Wynn*, No. 21-56285, 2023 WL 154965, at *2 (9th Cir. Jan. 11, 2023) (finding district court "did not abuse its discretion in denying the motion to take judicial notice of these documents, which it did not rely upon, and which were not necessary to its rulings on the motions to dismiss.") (citing *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 976 (9th Cir. 2006)).

## II.    DISCUSSION

In these three cases, there are more than twenty motions to dismiss or strike pending. (1854 Case-Docs. 10, 14, 21–23 (motions to dismiss), 30, 32–33, 36 (motions to strike untimely pleadings); 2244 Case-Docs. 8, 16–21 (motions to dismiss), 13, 15 (motions to strike untimely pleadings); 454 Case-Docs. 7,[7] 16–17 (motions to dismiss).) The Court first addresses the motions to strike Plaintiff's amended complaints filed in the 1854 Case and 2244 Cases and then addresses the motions to dismiss filed in all three cases.[8]

### A.    Motions to Strike Plaintiff's Amended Complaints

Plaintiff has filed numerous documents titled as amended complaints in the 1854 Case and 2244 Case. In each, multiple Defendants have moved to strike these filings as untimely. (1854 Case-Docs. 30, 32–33; 2244 Case-Docs. 13, 15.)

#### 1.    Amending Under Rule 15

Rule 15(a)(1) addresses amending as a matter of course and states that:

A party may amend its pleading once as a matter of course no later than:
   (A) 21 days after serving it, or

---

[7] As noted above, this Motion to Dismiss is denied as moot. (*See supra* n.6.)

[8] The Court separately addresses the pro se Defendants' motions to dismiss (1854 Case-Docs. 10, 14; 2244 Case-Docs. 17–21) and Defendants San Diego County Sheriff and the County of San Diego's motions to dismiss (454 Case-Doc. 16). (*See infra* II.B.4.)

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Rule 15(a)(2) addresses other amendments and states, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."

### 2.    1854 Case

Plaintiff's Complaint in the 1854 Case was filed on October 10, 2023 (1854 Case-Doc. 1), allegedly served between October 10, 2023 and October 11, 2023 (1854 Case-Docs. 3–11), and the Defendants' motions to dismiss followed from October 12, 2023 to November 1, 2023 (1854 Case-Docs. 10, 14, 21, 22, 23).  Plaintiff filed a document titled "1st Amended Complaint" on January 23, 2024.  (1854 Case-Doc. 29.)  Numerous Defendants moved to strike this filing as untimely on February 1, 2024 (1854 Case-Doc. 30) and February 27, 2024 (1854 Case-Doc. 36).  On February 1, 2024, Plaintiff filed another document titled "1st Amended Complaint."  (1854 Case-Doc. 31.)  Numerous Defendants then filed motions to strike this filing as untimely.  (1854 Case-Docs. 32–33.)

Plaintiff's attempts to amend her complaint in the 1854 Case were untimely under Rule 15(a)(1)(A).  The 1st Amended Complaints, filed on January 23, 2024 (1854 Case-Doc. 29) and February 1, 2024 (1854 Case-Doc. 31) were filed well more than 21 days after Plaintiff claims to have served her initial Complaint.  Plaintiff asserts she served the Complaint on Defendants on October 10, 2023 or October 11, 2023, depending on the Defendant.  (1854 Case-Docs. 3–11.)  These filings on January 23, 2024 and February 1, 2024 were also not filed within 21 days of Defendants' motions to dismiss, filed between October 12, 2023 and November 1, 2023.

Plaintiff's filings were untimely as amendments as a matter of right under Federal Rule of Civil Procedure ("Rule") 15(a)(1) and Plaintiff failed to obtain the stipulation of

Defendants or permission from the Court to amend under Rule 15(a)(2). Accordingly, the motions to strike these filings (1854 Case-Docs. 30, 32–33, 36) are **GRANTED**.[9]

### 3. 2244 Case

Plaintiff filed the 2244 Complaint (2244 Case-Doc. 1) on December 7, 2023 and served the only named Defendant in the 2244 Complaint, Defendant Commissioner Boucek, on the same day. (2244 Case-Doc. 1-4.) Defendant Commissioner Boucek filed a Motion to Dismiss this Complaint on December 28, 2023. (2244 Case-Doc. 8.) On January 23, 2024, Plaintiff filed a document titled "1st Amended Complaint" that named eleven new Defendants, most of whom were the same Defendants named in Plaintiff's 1730 Case.[10] (2244 Case-Doc. 10.) Defendant Commissioner Boucek moved to strike this filing as untimely. (2244 Case-Doc. 13.) Then, on February 1, 2024, Plaintiff filed a document titled "2nd Amended Complaint." (2244 Case-Doc. 14.) That filing only names Commissioner Boucek as a defendant. (2244 Case-Doc. 14 at 1.) Defendant Commissioner Boucek filed a motion to strike this filing as well. (2244 Case-Doc. 15.)

Plaintiff's attempts to amend in the 2244 Case were also untimely as amendments as a matter of right under Rule 15(a)(1)(A). The January 23, 2024 1st Amended Complaint (2244 Case-Doc. 10) and February 1, 2024 2nd Amended Complaint (2244 Case-Doc. 14) were both were filed well more than 21 days after Plaintiff claims to have served her initial Complaint, December 7, 2023 (2244 Case-Doc. 1-4). These filings were also not filed

---

[9] These motions to strike these pleadings are also granted for lack of opposition. CivLR 7.1.f.c) ("Waiver: If an opposing party fails to file the papers in the manner required by Civil Local Rule 7.1e.2, that failure may constitute a consent to the granting of a motion or other request for ruling by the Court.")

[10] In addition to the ten Defendants listed on the caption of Plaintiff's 1st Amended Complaint, there is an additional individual named in the filing, Benjamin Garret. (2244 Case-Doc. 10 at 98–101.) This January 23, 2024 filing appears to largely duplicate the allegations of the 1730 Complaint. (2244 Case-Doc. 10.)

12

within 21 days of Defendant Commissioner Boucek's Motion to Dismiss, filed on December 28, 2023.

Plaintiff's filings were untimely as amendments as a matter of right under Rule 15(a)(1) and Plaintiff failed to obtain the stipulation of Defendants or permission from the Court to amend under Rule 15(a)(2). Accordingly, the motions to strike these filings (2244 Case-Docs. 13, 15) are **GRANTED**.

### B.    Motions to Dismiss

#### 1.    Federal Rules of Civil Procedure

Defendants in all three cases seek dismissal under: Rule 12(b)(1) based on lack of subject-matter jurisdiction; Rule 12(b)(6) for failure to state claim; and Rule 8 for failing to provide a short and plain statement of each claim. (1854 Case-Docs. 21–23; 2244 Case-Docs. 8, 16;[11] 454 Case-Docs. 16–17.) The Court does not address whether the allegations of the complaints fail to comply with Rule 8 because the Court finds the complaints must be dismissed under Rule 12(b)(1) and 12(b)(6).

#### a)    Rule 12(b)(1)

Rule 12(b)(1) allows a defendant to move to dismiss a complaint based on a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Cmtys. for a Better Env.*, 236 F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (quoting *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke

---

[11] Numerous pro se Defendants have also filed motions to dismiss that are addressed below. (1854 Case-Docs. 10, 14; 2244 Case-Docs. 17–21.)

federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* (citation omitted).

### b)   Rule 12(b)(6)

Pursuant to Rule 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

### 2.   Specific Grounds for Dismissal Raised in Motions to Dismiss

Defendants' motions to dismiss assert numerous grounds for dismissing all three complaints without leave to amend and with prejudice: (1) the *Rooker-Feldman* doctrine;

14

(2) judicial immunity; (3) Defendants not being state actors; (4) failing to allege a plausible constitutional violation; (5) the domestic relations exception; (6) *Younger* abstention; (7) the *Noerr-Pennington* doctrine; (8) Eleventh Amendment Immunity; (9) failing to comply with Rule 8; and (10) the frivolity of the complaints. (1854 Case-Docs. 21–23; 2244 Case-Docs. 8, 16; 454 Case-Docs. 16, 17.) Most of these issues are raised by multiple Defendants.

The Court need not reach every basis argued because the *Rooker-Feldman* doctrine, judicial immunity, and Defendants not being state actors require dismissal of all three cases without leave to amend. Rather than addressing each individual motion, the Court addresses these issues collectively because of the significant overlap in the arguments in the motions and volume of motions before the Court.

### a)   *Rooker-Feldman* Doctrine

"Under *Rooker–Feldman*, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court. The United States Supreme Court is the only federal court with jurisdiction to hear such an appeal." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). The "doctrine bars a district court from exercising jurisdiction … over an action explicitly styled as a direct appeal, but also over the 'de facto equivalent' of such an appeal." *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012) (quoting *Noel*, 341 F.3d at 1155). A case presents "a forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court and seeks relief from the judgment of that court." *Id.* at 777–78 (explaining that in "determin[ing] whether an action functions as a de facto appeal, we 'pay close attention to the *relief* sought by the federal-court plaintiff.") (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (emphasis in original)). "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff

15

asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does not bar jurisdiction." *Noel*, 341 F.3d at 1164.

"*Rooker–Feldman* 'is confined to cases … brought by state-court losers ... inviting district court review and rejection of [the state court's] judgments. *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); *see also Reed v. Goertz*, 598 U.S. 230, 235 (2023) (distinguishing federal challenges to state statutes or rules and reiterating that *Rooker-Feldman* "prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments.") (citations omitted).

"A federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal.  As part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel*, 341 F.3d at 1158.  "[C]laims [are] inextricably intertwined where the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Cooper*, 704 F.3d at 779 (internal quotation marks and citations omitted).  Or stated another way, "the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.  Where federal relief can only be predicated up upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." *Id.* (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)).

Plaintiff does not "explicitly style[] [her claims] as a direct appeal," however, the 1854 and 2244 Complaints and the 454 FAC are "the 'de facto equivalent' of such an appeal." *Cooper*, 704 F.3d at 777.  Plaintiff asserts that numerous decisions in the state family law case are in violation of the law and requests this Court invalidate and void those decisions. (*See* 1854 Compl. at 67 (asserting the October 10, 2023 Order is "in violation

of law," "without lawful justification," and that Defendants have "caused an invalid restraining order to be issued against Plaintiff"), 71 (Plaintiff's related request for an order "to refrain from taking any further action in the [family law case] immediately until a final hearing and resolution of this action"); 2244 Compl. at 18–19 (alleging Defendant Commissioner Boucek "violated the law" in issuing every order in the family law case), 45 (asking the Court to void and vacate all the court orders made by Defendant Commissioner Boucek); 454 FAC at 49–51 (alleging the court orders of numerous judges are void), 67 (requesting the Court order Defendants not to take any further action in her family law case and disqualify Defendants).)  Plaintiff's claims are based on her continuing assertion that all of Defendant Commissioner Boucek's decisions against Plaintiff have been unlawful or invalid because she should have disqualified herself from the family law case.  (*See* 2244 Compl. at 1–24, 28–30, 43.)  As summarized above (*see supra* I.A.2 (1854 Compl.), I.A.3 (2244 Compl.), I.A.4 (454 FAC)), while there is some variation in Plaintiff's allegations against the newly named judges, *i.e.*, different basis for disqualification of the judges, Plaintiff continues to seek invalidation of every decision made against her in the family law case because, she alleges, they have all been in violation of the law.  (*See* 1854 Compl. at 76, 71; 2244 Compl. at 18–19, 45; 454 FAC at 67.)

Plaintiff's claims fall within *Rooker-Feldman*'s jurisdictional bar because they are de facto appeals of decisions issued in her family law case.  While her prior cases focused more exclusively on the DVRO issued against her, the volume of state court decisions she challenges does not change that she is complaining of "a legal wrong committed by the state court"—essentially every decision issued against her in the family law case—and "seeks relief from the judgment of that court"—invalidation of each of those decisions. *Cooper*, 704 F.3d at 778.  Plaintiff has lost in state court repeatedly and is asking this Court to review and reject the state court's decisions.  *Skinner*, 562 U.S. at 532 ("*Rooker–Feldman* is confined to cases … brought by state-court losers ... inviting district court review and rejection of [the state court's] judgments.") (citations omitted).

The allegations of conspiracy as to Defendants other than the named judges do not change this conclusion. The primary relief requested in these cases—voiding or invalidating numerous state court decisions—"would effectively reverse the state court decision[s] or void its ruling[s]." *Cooper*, 704 F.3d at 779; *see also Bianchi*, 334 F.3d at 900 ("[U]nder *Rooker-Feldman*, we must pay close attention to the *relief* sought by the federal-court plaintiff.") (quotations omitted) (emphasis in original). Plaintiff vaguely alleges that other Defendants conspired with the judges in conducting hearings that resulted in some of the decisions she challenges. For example, she alleges participation in or not intervening to stop hearings Plaintiff did not attend furthered a conspiracy. (*See* 1854 Compl. at 28, 44, 54.) These allegations as to underlying proceedings do not alter the analysis under *Rooker-Feldman* because "[w]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." *Cooper*, 704 F.3d at 779 (citation omitted); *see also Boudette v. Oskerson*, No. 22-36003, 2024 WL 1342613, at *2 (9th Cir. Mar. 29, 2024) (finding case "clearly barred by *Rooker-Feldman*" when the plaintiff's alleged injuries "flow from a series of state court judgments that ha[d] been entered against [her] in protracted litigation" with an ex-spouse over property). Plaintiff is "essentially ask[ing] [this] [C]ourt to review the state court's denial[s] in a judicial proceeding … and to afford [her] the same individual remedy [she] was denied in state court." *Bianchi*, 334 F.3d at 898–99 (internal citation omitted).

Thus, Plaintiff's claims in the 1854, 2244, and 454 cases are barred by *Rooker-Feldman* and these cases must all be dismissed for lack of subject matter jurisdiction. *Id.* at 898 ("If claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction.").

3:23-cv-1854-RBM-VET;
3:23-cv-2244-RBM-VET;
3:23-cv-0454-RBM-VET

The 1854 Complaint, 2244 Complaint, and 454 FAC are **DISMISSED** for lack of subject-matter jurisdiction based on the *Rooker-Feldman* bar.  This is a sufficient basis for dismissal of all three complaints against all Defendants.  However, given the Court's obligation to consider whether leave to amend should be granted, the Court addresses two additional issues that require dismissal of these cases.

### b)      Judicial Immunity

Defendants Commissioner Boucek, Judge Smyth, Judge Morris, Judge Hallahan, Judge Miller, Judge Mody, and Judge Rosenstein (hereinafter, "Judicial Defendants") move to dismiss Plaintiff's claims without leave to amend based on judicial immunity. (1854 Case-Doc. 22-1 at 4–7; 2244 Case-Doc. 8-1 at 5–7; 454 Case-Doc. 17-1 at 15–18.) Defendants argue they are entitled to absolute judicial immunity because Plaintiff's claims arise from actions they took as state judicial officers.  (1854 Case-Doc. 22-1 at 7; 2244 Case-Doc. 8-1 at 6–7; 454 Case-Doc. 17-1 at 17–18.)  Similarly, Judge Smyth and Judge Hallahan argue the conduct alleged against them—that they failed to properly supervise or correct other judges—are based on supervisory responsibilities that were "very much a function of [their] judicial office[s]."  (1854 Case-Doc. 22-1 at 7; 454 Case-Doc. 17-1 at 17–18.)

State judges and commissioners of the superior courts are entitled to immunity for their judicial acts.  *Swift v. California*, 384 F.3d 1184, 1188 (9th Cir. 2004) ("It is well established that state judges are entitled to absolute immunity for their judicial acts.") (citations omitted); *Franchesi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (finding Commissioner was immune "performing judge-like functions that were not clearly outside the scope of his jurisdiction") (quotations omitted); *see also Ricotta v. State of California*, 4 F. Supp. 2d 961, 973 (S.D. Cal. 1998) ("Judicial immunity extends to municipal court commissioners.").  "The primary policy of extending immunity to judges … is to ensure independent and disinterested judicial … decisionmaking."  *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (citations omitted).

Judicial immunity applies in cases brought under § 1983. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (citation omitted). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* at 356–57. Additionally, "allegations that a conspiracy produced a certain decision should no more pierce the actor's immunity than allegations of bad faith, personal interest or outright malevolence." *Ashelman*, 793 F.2d at 1078 (citations omitted).

Plaintiff's claims against all the Judicial Defendants clearly fall within the Judicial Defendants' jurisdiction. *See Stump*, 435 U.S. at 356; *Ashelman*, 793 F.2d at 1075. They were acting in a judicial capacity in holding hearings, issuing decisions, or supervising other judicial officers. The Judicial Defendants are all entitled to absolute judicial immunity. Accordingly, Plaintiff's claims against the Judicial Defendants are additionally **DISMISSED** based on judicial immunity.

### c)    Non-Judicial Defendants – State Actor Requirement

The other Defendants named in the 1854, 2244, and 454 cases are not judges—Defendants Finkbeiner, Yip, Sachdev, Heinrich, Samuel Martinette, Wilkinson, Sherman, Wise, Black, Willmore, Louis Martinette, and Marie Martinette[12] (hereinafter, "Non-Judicial Defendants"). Numerous Non-Judicial Defendants move to dismiss based on the

---

[12] Defendants Sherman, Wise, Black, Willmore, Louis Martinette, and Marie Martinette are only named in the January 23, 2024 1st Amended Complaint in the 2244 Case (2244 Case-Doc. 10) that the Court has stricken as untimely (*see supra* II.A.3). However, the analysis that follows would apply equally to the claims asserted against them in that untimely filing. They are all private actors, and their conduct could not be attributable to the state. Defendant Pena, named in the 454 FAC, might conceivably be considered a state actor, however there are no *factual*, as opposed to conclusory, allegations as to what he did. It also appears that he was never served. In this respect, even if the claims were not barred by *Rooker-Feldman*, any claims against Defendant Pena in the 454 Case would also not survive dismissal.

Non-Judicial Defendants not being state actors as required for a § 1983 claim. (1854 Case-Doc. 21-1 at 14–15; 1854 Case-Doc. 23-1 at 19–20.)

"A § 1983 plaintiff must demonstrate a deprivation of a right secured by the Constitution or laws of the United States, *and that the defendant acted under color of state law*." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added)). "In order to recover under § 1983 for conduct by the defendant, a plaintiff must show 'that the conduct allegedly causing the deprivation of a federal right *be fairly attributable to the State*.'" *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (emphasis added) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (citations omitted)). "The state-action element in § 1983 'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

The factual allegations in the 1854 Complaint indicate that the Non-Judicial Defendants were private actors. To the extent these Defendants' connection to the family law case is identified at all, the role alleged makes clear they were not state actors. As summarized above, they are alleged to have been present for hearings in the family law case, not intervened to stop hearings or false comments from being made, or made false comments in a hearing. (*See* 1854 Compl. at 23–58, 62.) To the extent their connection to the proceedings is identified, they appear to be either attorneys for a party in the family law case or present at a hearing in the family law case. These factual allegations do not even suggest the conduct of the Non-Judicial Defendants could "be fairly attributable to the State." *Caviness*, 590 F.3d at 812 (explaining that "a plaintiff must show that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.").

Plaintiff's allegations that the Non-Judicial Defendants conspired with others in attending and not stopping the hearings are also insufficient to meet the state actor requirement of § 1983. For example, Plaintiff alleges that Defendant Finkbeiner "furthered

21

the conspiracy by participating in the unlawful hearing," that Defendant Yip "failed to intervene to stop the violation and furthered the conspiracy to deprive Plaintiff of her fundamental right to liberty," and that Defendant Sachdev "furthered the conspiracy by refusing to stop the ex-parte communication, and instead added additional derogatory and inflammatory information about [Plaintiff] with the intent to support further deprivations of liberty of Plaintiff." (*See* 1854 Compl. at 28 (Finkbeiner), 44 (Yip); 54 (Sachdev).) "[M]erely resorting to the courts … does not make a party a co-conspirator or a joint actor with the judge." *Price v. State of Hawaii*, 939 F.2d 702, 708 (1991) (citation omitted); *Schucker v. Rockwood*, 846 F.2d 1202, 1205 (9th Cir. 1988) ("[C]onclusory allegations that [a Judge] conspired with [attorneys] are insufficient to support [a] section 1983 claim.") (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)). (per curiam). And "[i]nvoking state legal procedures does not constitute 'joint participation or 'conspiracy' with state officials sufficient to satisfy section 1983's state action requirement." *Schucker*, 846 F.2d at 1205 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 n.21 (1982)).

Plaintiff also alleges Defendants were "acting under color of law because [they were] judicial officer[s] of the court who subjected Plaintiff to a deprivation of her liberty, and by [their] conduct, under State Law, deprived Plaintiff of her liberty without due process." (*See e.g.* 1854 Compl. at 29.) However, most of the Non-Judicial Defendants are attorneys whose only connection to the family law case is serving as private counsel for one of the parties. As examples, Defendants Finkbeiner, Wilkinson, and Yip are alleged to be attorneys representing Plaintiff's ex-husband (*See* 1854 Compl. at 24, 32, 41) and Defendant Sachdev is alleged to be an attorney for Plaintiff's minor children. (*See* 1854 Compl. at 49, 53.) Generally, private attorneys are not state actors. *Briley v. California*, 564 F.2d 849, 855 (9th Cir. 1977) ("We have repeatedly held that a privately-retained attorney does not act under color of state law for purposes of actions brought under the Civil Rights Act."). In family law cases, like this one, courts regularly reject attempts to label an attorney for an opposing party as a state actor under § 1983. *See Plasola v.*

22

*California*, Case No. CV 19-5592 JAK (SS), 2019 WL 8013107, at *2 (C.D. Cal. Nov. 8, 2019) (collecting cases).

The Non-Judicial Defendants are either private attorneys[13] or private individuals and there are no factual allegations from which the Court could even infer they were acting under color of state law.  Accordingly, the claims against the Non-Judicial Defendants must also be **DISMISSED** for failing to meet the state actor requirement for a § 1983 claim.

In summary, the 1854, 2244, and 454 Cases are **DISMISSED** based on lack of subjection matter jurisdiction under *Rooker-Feldman*, judicial immunity for the Judicial Defendants, and not meeting the state actor requirement as to the Non-Judicial Defendants.

### 3.    Leave to Amend

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).  Here, in addition to not seeking leave to amend or explaining how she could, Plaintiff did not file oppositions to any of the motions to dismiss or strike filed in any of these cases.

When determining whether to grant leave to amend, courts generally consider five factors, known as the *Foman* factors as stated by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962).  These factors include: (1) undue delay; (2) bad faith on the part

---

[13] The Motion to Dismiss filed by Defendants Yip, Finkbeiner, and Wilkinson in the 1854 Case includes a request for sanctions under the Court's inherent powers based on Plaintiff filing the 1854 Case, as well as the preceding 1730 and 1839 Cases under § 1983 despite Plaintiff admitting that they are private individuals.  (1854 Case Doc. 23-1 at 23–24.) While Plaintiff's state actor allegations against the Non-Judicial Defendants are, at best, insufficient legal conclusions that cannot be cured by amendment, the Court is not persuaded that sanctions based on bad faith are warranted on this basis at this point.  The request for sanctions under the Court's inherent powers based on Plaintiff's state actor allegations is **DENIED** without prejudice.

of the party seeking leave to amend; (3) undue prejudice to the non-moving party; (4) futility of amendment; and (5) whether the plaintiff has previously amended the complaint. *Id*. "Dismissal of a complaint without leave to amend is proper where it is clear that the complaint could not be saved by amendment," *i.e.*, amendment would be futile. *Cooper*, 704 F.3d at 783.

The Court finds Plaintiff should not be granted leave to amend her claims. Plaintiff has only previously amended the claims in the 454 Case and has not engaged in undue delay in these particular cases. However, she has not responded to any of the many motions filed by Defendants in these cases or the motions filed by Defendants in her prior cases. And based on the record in these three cases and the two cases previously dismissed without leave to amend, it appears Plaintiff may be attempting to obstruct the proceedings in the family law case and harass or be a nuisance to the Defendant attorneys and witnesses in the family law case because she is displeased with the decisions in her family law case. This Court would be enabling or extending that harassment and risk undue prejudice to these Defendants in having to file another round of motions to dismiss an amended pleading when Plaintiff did not even respond to their first set of motions.

Additionally, any amendment would be futile. The Court lacks subject-matter jurisdiction under *Rooker-Feldman* and that is not an issue that could be cured under the circumstances of this case. Plaintiff's claims in these three cases raise challenges to state court decisions in her family law case. That cannot be cured by amendment. When claims are barred by *Rooker-Feldman* and there is no basis for finding the claims could be cured, dismissal without leave to amend is permissible. *See Boudette*, 2024 WL 1342613, at * 2 (explaining that when "there is no basis to conclude [a plaintiff] could replead [their] claims to avoid the *Rooker-Feldman* jurisdictional bar, there is no prejudicial error in the district court's refusal to grant leave to amend.") (citing *Cervantes v. Countrywide Home Loans*, 656 F.3d 1034, 1041 (9th Cir. 2011)).

///

24

Even if the claims were not barred by *Rooker-Feldman*, Plaintiff's claims could still not be cured by amendment because, as discussed above, the Defendants are either not state actors or entitled to judicial immunity. "If judicial … immunity bar[s] recovery, no amendment could cure the deficiency and the action [is] properly terminated on a motion to dismiss." *Ashelman*, 793 F.2d at 1075. Any amendment would be futile and allowing Plaintiff to amend would be unduly prejudicial to the Defendants. Accordingly, the Court **DENIES** leave to amend.

### 4. Other Motions Filed

#### a) Additional Motions to Dismiss

Pro se Defendants Heinrich, Wise, Marie Martinette, Louis Martinette, and Samuel Martinette have filed motions seeking dismissal under Rule 12(b)(5) for failure to serve and Rule 12(b)(6). (1854 Case-Docs. 10, 14; 2244 Case-Docs. 17–21.) Defendants San Diego County Sheriff and the County of San Diego also filed a Motion to Dismiss based on failure to properly serve. (454 Case-Doc. 16.) Given the Court's dismissal of all three cases without leave to amend, these motions are moot. Additionally, the pro se motions to dismiss in the 2244 Case (2244 Case-Docs. 17–21) are also moot because the Court has stricken the amended complaints those motions seek to dismiss.[14] The Court **DENIES** these Motions (1854 Case-Docs. 10, 14; 2244 Case-Docs. 17–21; 454 Case-Doc. 16) as **MOOT**.

#### b) Pro Se Defendant Samuel Martinette's Motion to Declare Plaintiff a Vexatious Litigant

Pro se Defendant Samuel Martinette has filed a Motion to Declare Plaintiff a Vexatious Litigant. (1854 Case-Doc. 37.)

---

[14] As explained above, Plaintiff's filing on January 23, 2024—that names these Defendants—was untimely. (*See supra* II.A.)

"Federal courts can 'regulate the activities of abusive litigant by imposing carefully tailored restrictions under …appropriate circumstances.'" *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1061 (9th Cir. 2014) (quoting *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). "'[P]refiling orders should rarely be filed,' and only if courts comply with certain procedural and substantive requirements." *Id.* at 1062 (quoting *De Long*, 912 F.2d at 1147). "When district courts seek to impose pre-filing restrictions, they must: (1) give litigants notice and 'an opportunity to oppose the order before it is entered;' (2) compile an adequate record for appellate review, including 'a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed;' (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as 'to closely fit the [specific vice encountered.'" *Id.* (quoting *DeLong*, 912 F.2d at 1147–48). In making findings as to the two substantive factors, courts must consider an additional five considerations: "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties." *Id.* "The final consideration … is particularly important." *Id.*

Plaintiff's conduct in filing these five cases, particularly naming many defendants without any factual allegations, suggests an intent to harass the defendants. Additionally her filings have caused needless expense to the parties and burden on the Court. However, Plaintiff has not filed any motions in any of her cases and appears to have ceased filing new cases in this Court. *See id.* at 1065 (noting two cases were far from an inordinate number and collecting cases finding litigants vexatious based on the filing of 35, 50, and 600 frivolous cases) (citations omitted). In particular, the Court notes she has not filed any

26

new cases since the Court dismissed the two earliest-filed cases.  Accordingly, the Court is not inclined to enter a pre-filing restriction on Plaintiff at this time.  Pro se Defendant Samuel Martinette's Motion to Declare Plaintiff a Vexatious Litigant (1854 Case-Doc. 37) is **DENIED** without prejudice.  However, the Court notes that if Plaintiff continues to file cases in this Court challenging decisions in the state family law proceedings, the Court will consider a motion to impose a pre-filing requirement.

### III.   CONCLUSION

For the foregoing reasons and as set forth above, the Court **DISMISSES** the 1854 Case, the 2244 Case, and the 454 Case **WITHOUT LEAVE TO AMEND**.  The requests for judicial notice are **GRANTED in part** as set forth above (*see supra* I.B) and otherwise **DENIED.**

As set forth in detail above, the Court rules as follows in the **1854 Case**:

- Defendant Sachdev's Motion to Dismiss (1854 Case-Doc. 21) is **GRANTED**;

- Defendants Judge Morris and Judge Smyth's Motion to Dismiss (1854 Case-Doc. 22) is **GRANTED**;

- Defendants Yip, Finkbeiner, and Wilkinson's Motion to Dismiss (1854 Case-Doc. 23) is **GRANTED** as to dismissal and **DENIED** as to sanctions;

- Defendants Judge Morris and Judge Smyth's Ex Parte Motions to Strike Plaintiff's January 23, 2024 and February 1, 2024 "1st Amended Complaint[s]" (1854 Case-Docs. 30, 32) are **GRANTED**;

- Defendants Yip, Finkbeiner, and Wilkinson's Ex Parte Motion to Strike Plaintiff's February 1, 2024 "1st Amended Complaint" (1854 Case-Doc. 33) is **GRANTED**;

- Defendant Sachdev's Motion to Strike Plaintiff's January 23, 2024 "1st Amended Complaint" (1854 Case-Doc. 36) is **GRANTED**;

- Pro se Defendants' motions to dismiss (1854 Case-Docs. 10, 14) are **DENIED as MOOT**;

3:23-cv-1854-RBM-VET;
3:23-cv-2244-RBM-VET;
3:23-cv-0454-RBM-VET

- Pro se Defendant's request to declare Plaintiff a vexatious litigant (1854 Case-Doc. 37) is **<u>DENIED</u>**;

- Plaintiff's Request to Electronically File (1854 Case-Doc. 13) is **<u>DENIED</u> as MOOT**.

For the foregoing reasons and as set forth in detail above, the Court rules as follows in the 2244 Case:

- Defendant Commissioner Boucek's Motion to Dismiss (2244 Case-Doc. 8) is **<u>GRANTED</u>**;

- Defendant Commissioner Boucek's Ex Parte Motions to Strike Plaintiff's January 23, 2024 "1st Amended Complaint" (2244 Case-Doc. 13) and Plaintiff's February 1, 2024 "1st Amended Complaint" (2244 Case-Doc. 15) are **<u>GRANTED</u>**;

- Defendant Yip's Motion to Dismiss (2244 Case-Doc. 16) is **<u>DENIED as MOOT</u>**;

- Pro se Defendants' motions to dismiss (2244 Case-Docs. 17–21) are **<u>DENIED as MOOT</u>**;

- Plaintiff's Request to Electronically File (2244 Case-Doc. 3) is **<u>DENIED as MOOT</u>**;

For the foregoing reasons and as set forth in detail above, the Court rules as follows in the 454 Case:

- Defendants' Motion to Dismiss the 454 FAC (454 Case-Doc. 17) is **<u>GRANTED</u>**;

- Defendants' Motion to Dismiss Plaintiff's initial Complaint (454 Case-Doc. 7) is **<u>DENIED as MOOT</u>**;

- Defendants' Motion to Dismiss based on improper service (454 Case-Doc. 16) is **<u>DENIED as MOOT</u>**.

3:23-cv-1854-RBM-VET;
3:23-cv-2244-RBM-VET;
3:23-cv-0454-RBM-VET

The Clerk shall enter judgment dismissing the 1854 Case, the 2244 Case, and 454 Case without leave to amend and close those cases.

**IT IS SO ORDERED.**

Dated:  July 8, 2024

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:23-cv-1854-RBM-VET;
3:23-cv-2244-RBM-VET;
3:23-cv-0454-RBM-VET